**Mitchell Ray NICHOLAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 14–00–00312–CR to
14–00–00317–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 23, 2001.

Tony Aninao, Houston, for appellants.

Carmen Castillo Mitchell, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and WITTIG.

## OPINION

YATES, Justice.

Appellant, Mitchell Ray Nicholas, pled guilty to three indictments for aggravated sexual assault of a child and three indictments for indecency with a child.[1] There was no agreed recommendation from the State as to punishment, and the court sentenced appellant to life imprisonment on each conviction—five to run consecutively and the sixth concurrently. In seven points of error, appellant claims his plea was involuntary, his sentence violates state and federal constitutional prohibitions against cruel and unusual punishment, the trial court erred in ordering his sentences to run consecutively, and he received ineffective assistance of counsel. We modify the judgments and affirm them as modified.

### I. Background Facts and Procedural History

Appellant is a recidivist child sex offender: In 1985, he was convicted of aggravat-

---

1. TEX. PEN.CODE ANN. § 22.021(a)(1)(B) and § 21.11 (Vernon Supp.2000).

ed sexual assault, and in 1989, of indecency with a child. These convictions formed the basis of the State's enhancement paragraphs in these cases, to which appellant eventually entered pleas of "true".[2] In a pre-sentence investigation report, appellant further acknowledged that, in 1993— within a year of being paroled from his conviction for indecency with a child and while he was enrolled in a counseling program that he was ordered to attend as a condition of parole—he again began sexually abusing young boys. In all, appellant admitted to molesting more than 70 children over a span of about 28 years.

The record also indicates that, at the time appellant entered his guilty pleas in these cases, the U.S. Attorney's office was considering filing charges against him in connection with his distribution of child pornography over the Internet, a federal offense. In fact, the trial court continued the first sentencing hearing because of the "possibility that charges are going to be filed in the federal system" and "so that whatever the federal prosecutors do, they may do or they will do." After waiting nearly four months, and with no federal charges having yet been filed, the trial court pronounced sentence.

## II. The Consecutive Sentences

In his first three points of error, appellant complains about the trial court's imposition of consecutive sentences for five of the convictions. First, he argues that the imposition of consecutive sentences was an abuse of the court's discretion. Next, he argues that the court was not authorized to impose consecutive sentences because there was no "subsequent conviction" within the meaning of article 42.08(a) of the Code of Criminal Procedure. Finally, he complains that the five consecutive life sentences form a non-terminating series of sentences. As a threshold matter, the State argues that appellant waived these arguments because he did not raise it in the court below. We disagree. "An improper cumulation order is, in essence, a void sentence, and such error cannot be waived." *LaPorte v. State*, 840 S.W.2d 412, 415 (Tex.Crim.App.1992).

## A. The Court's Discretion Under 42.08

Under article 42.08 of the Code of Criminal Procedure, the trial judge has the discretion to cumulate the sentences for two or more convictions.[3] *Smith v. State*, 575 S.W.2d 41, 41 (Tex.Crim.App. 1979); *Harvey v. State*, 821 S.W.2d 389, 392 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) (citing Tex.Code Crim. Proc. Ann. art. 42.08(b)). A trial court abuses its discretion when it applies an erroneous legal standard or when no reasonable view of the record supports the trial court's conclusion under the correct law and facts viewed in the light most favorable to its legal conclusion. *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex.Crim.App.1996),

2. Appellant entered a plea of "not true" to the enhancement paragraphs at the time of his plea hearing, but changed his pleas to "true" at the first sentencing hearing.

3. Prior to 1997, the Legislature required multiple convictions arising out of "the same criminal episode" and "prosecuted in a single criminal action" to run concurrently. Tex. Pen.Code Ann. § 3.03 (Vernon 1994). In 1997, however, the Legislature amended section 3.03. It now provides that, where "the accused is found guilty of more than one offense arising out of the same criminal episode, the sentences may run concurrently or consecutively if each sentence is for a conviction of an offense under Section 21.11, 22.011[or] 22.021 ... committed against a victim younger than 17 years of age at the time of the commission of the offense...." Tex. Pen.Code Ann. § 3.03(b)(2) (Vernon Supp. 2000).

*overruled on other grounds, by Guzman v. State*, 955 S.W.2d 85, 90 (Tex.Crim.App. 1997). As a practical matter, however, an abuse of discretion generally will be found only if the trial court imposes consecutive sentences where the law requires concurrent sentences,[4] where the court imposes concurrent sentences but the law requires consecutive ones,[5] or where the court otherwise fails to observe the statutory requirements pertaining to sentencing.[6] In short, so long as the law authorizes the imposition of cumulative sentences, a trial judge has absolute discretion to stack sentences. *Quintana v. State*, 777 S.W.2d 474, 480 (Tex.App.—Corpus Christi 1989, pet. ref'd) (citing *Smith*, 575 S.W.2d at 41 and *Carney v. State*, 573 S.W.2d 24, 27 (Tex.Crim.App.1978)).

■ Nevertheless, appellant argues that the court abused its discretion simply because he will not be eligible for parole until Year 2150—or not until he is 190 years old. We disagree. In a letter attached to the PSI report, it was appellant who told the judge that he "find[s] more peace of mind for myself when I am incarcerated so I have no access to boys," and described himself in that letter as "a monster who preys on innocent children." Based on appellant's own acknowledgments (including his admission that he molested more than 70 boys); his prior convictions (which involved five different children, four of whom were his friends' children); and the facts of this case,[7] we cannot say that, in ordering the sentences to run consecutively, the trial court abused the discretion the Legislature vested in it. Indeed, the natural conclusion of appellant's letter is that, were he released in the future, he would offend again.[8] Therefore, even if the trial court's decision to impose concurrent or consecutive sentences was subject to a traditional "outside the zone of reasonable disagreement" abuse of discretion standard of review, we find the trial court did not abuse its discretion in imposing con-

4. *See, e.g.*, Tex. Pen.Code Ann. § 3.03(a) (Vernon Supp.2000) (mandating concurrent sentences subject only to certain delineated exceptions).

5. *See, e.g.*, Tex.Code Crim. Proc. Ann. art. 42.08(b) (Vernon Supp.2000) (mandating consecutive sentences where an inmate is convicted of an offense and he has not completed the sentence he was serving at the time of the subsequent offense).

6. *See, e.g.*, *Worthington v. State*, 38 S.W.3d 815 (Tex.App.—Houston [14th Dist.] 2001, no pet.) (modifying judgment where court stacked earlier conviction on top of subsequent conviction); *see also Allen v. State*, 951 S.W.2d 925 (Tex.App.—San Antonio 1997, pet. ref'd) (finding an abuse of discretion where trial court stacked sentences but defendant not sufficiently identified as person previously convicted).

7. Appellant gained access to most of his victims through his job, a cook at a Houston-area Jewish day school. The specific charges included appellant's forcing young boys—all of whom were between seven and 15 years old—to watch appellant masturbate, to give and receive oral sex, and to perform sexual acts before a camera. Additionally, appellant admitted to other acts of sodomy with children and to trading sexually explicit pictures of children with other pedophiles over the Internet.

8. For instance, appellant writes in his letter that "I know that sex with young boys is wrong. For the majority of my life, I have had an ongoing battle with what I know is wrong, against my emotions, wants and desires" and writes that "the availability of child pornography [on the Internet] became like a drug. My deviant behavior excellerated [sic] until the time of my arrest. I do not know what the answer to this problem is. For me, it is over and I will spend the remainder of my life incarcerated," and finally—and almost prophetically—"It is too late to help me now, but I wish the system could do something to help those people with the same problem so that they don't end up like me. This will not only save them but all the children they will be uncontrollably attracted to."

secutive sentences. Appellant's first point of error is overruled.

## B. The Meaning of "Subsequent Conviction" in Article 42.08

■■■■ In his next point of error, appellant claims that, because there is no "subsequent conviction" within the meaning of article 42.08(a) of the Code of Criminal Procedure, the trial court was not authorized to impose consecutive sentences. Appellant cites no authority to support this argument, other than to quote from the statute, which provides, in relevant part:

> When the same defendant has been convicted in two or more cases, the judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction.... [T]he judgment in the second and subsequent convictions may either be that the sentence imposed or suspended shall begin when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate....

TEX.CODE CRIM. PROC. ANN. art. 42.08(a) (Vernon Supp.2000). Article 42.08 speaks in terms of subsequent convictions, not subsequent sentences. It is not necessary "that a sentence be announced before the subsequent conviction." *Worthington,* 38 S.W.3d at 820. *Hughes v. State* presented the Austin Court of Appeals with a similar question. 673 S.W.2d 654 (Tex.App.—Austin 1984, pet. ref'd). There, like here,

the State charged the defendant in multiple indictments—two for aggravated rape and one each for aggravated kidnapping, burglary of a habitation with intent to commit rape, and unauthorized use of a motor vehicle. *Id.* at 655–56. In a consolidated trial, the jury returned a guilty verdict to the five charges. *Id.* at 656. On appeal, the defendant argued that "the trial court erred [in ordering consecutive, or stacked, sentences] because the trial court had no basis upon which to determine the exact order in which the jury decided the verdicts." *Id.* at 658. Here, appellant urges that there is no subsequent conviction because he was "convicted and sentenced on his guilty pleas in a single consolidated proceeding before the same judge at the same time...." *Hughes* stands for the proposition that, where a defendant is found guilty in a consolidated proceeding, there need not be an exact order of the presentment of the verdicts in order to fulfill the requirements of 42.08(a). We see no reason to distinguish the holding by the Austin Court of Appeals merely because Hughes was found guilty by a jury, whereas here appellant pled guilty to a judge.[9] Because the trial court was authorized under 42.08 to cumulate the sentences, its imposition of consecutive sentences was not an abuse of discretion. Appellant's second point of error is overruled.

9. Additionally, appellant's argument would render section 3.03 of the Penal Code meaningless. As noted above, unless subsection (b) applies, section 3.03 requires that the sentences run concurrently if the offenses arise out the same criminal episode and are prosecuted in a single criminal prosecution. TEX. PEN.CODE ANN. § 3.03(a) (Vernon Supp.2000). Subsection (b) grants the court discretion to stack the sentences where the defendant is found guilty of multiple sex-related crimes, including aggravated sexual assault and inde-

cency with a child, even if prosecuted in a single proceeding. *Cf. Prudhomme v. State,* 47 S.W.3d 683, 691–92 (Tex.App.—Texarkana 2001, pet. ref'd.) (stating even if defendant's aggravated sexual assault trials, which involved his three stepdaughters, were consolidated into a single proceeding, the trial court would have had discretion to cumulate his sentences under section 3.03(b)(2)(A)). Following appellant's rationale, a court could never cumulate sentences under subsection (b) because there would never be a "subsequent conviction."

## C. Cumulation Orders Create a Non-Terminating Series of Sentences

In appellant's third point of error, he asserts that the trial court erred because the sentences form a "loop," or non-terminating series, of consecutive sentences. The judgment in cause number 805,724 reflects that appellant begins serving that life sentence after he has finished his life sentence in 805,726, which begins after he serves his life sentence in 805,727, which begins after he serves his life sentence in 805,728, which begins after he serves his life sentence in 801,420, which begins after he serves his life sentence in 805,724. Thus, read literally, the judgments form a non-terminating series, as the sentence in 805,724 is both appellant's first and, as it were, his last, thereby starting the series again.

■■■ Appellant contends that, because of the error in the cumulation orders, we must remand for a new determination as to punishment only. We disagree. It is well-established that an appellate court may reform a judgment to correct a clerical error in the trial court's judgment. TEX.R.APP. P. 43.2(b); *see also Bigley v. State*, 865 S.W.2d 26 (Tex.Crim.App.1993) (acknowledging an appellate court's ability to reform a judgment resulting from a clerical error). At the time the sentences were announced in open court, the trial court correctly cumulated the sentences as follows:

THE COURT: This court will order that after Mr. Nicholas has finished his sentence in 805,724 that he will begin his sentence in 805,727. After he has finished the sentences in 805,724 and 805,-727, he will begin his life sentence in 805,726. And that after Mr. Nicholas has finished the sentences in the three previous cause numbers, he will begin his life sentence in cause number 805,-728. And after Mr. Nicholas has finished the previous life sentences in the other four cause numbers, he will begin his life sentence in cause number 801,-420. And cause number 805,725 will run concurrently [with] the other causes.

■■■ When there is a variation between the oral pronouncement of sentence and the written memorialization of the sentence, the oral pronouncement controls. *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim.App.1998). Also, when a court of appeals has the necessary data and evidence before it for reformation, an erroneous judgment may be reformed on appeal. *Baxter v. State*, 936 S.W.2d 469, 473 (Tex. App.—Fort Worth 1996), *pet. dism'd, improvidently granted*, 960 S.W.2d 82 (Tex. Crim.App.1998); *Bigley*, 865 S.W.2d at 27; *Banks v. State*, 708 S.W.2d 460, 462 (Tex. Crim.App.1986). Here, we have a variation between the oral pronouncement of sentence and its written memorialization, and we have the necessary data for reformation.

Therefore, we reform the sentences in cause numbers 805,724, 805,726, 805,727, 805,728, and 801,420 as follows. The sentence in 805,725–the concurrent sentence–need not be reformed. The judgment in cause number 805,724 is changed to delete the reference that it "runs cumulative to cause no. 805,726, a life sentence in the Texas Department of Corrections, Institutional Division, for indecency with a child dated January 14, 2000, in the 176th Court." Accordingly, 805,724 is the first life sentence appellant will serve.

The judgment in cause number 805,727 is reformed. That judgment will now read: "This sentence runs cumulative to cause no. 805,724, a life sentence in the Texas Department of Criminal Justice, Institutional Division, for indecency with a child dated January 14, 2000, in the 176th Court." Accordingly, the sentence in cause number 805,727 is the second consecutive life sentence appellant will serve.

The judgment in cause number 805,726 is reformed. That judgment will now read: "This sentence runs cumulative to cause no. 805,727, a life sentence in the Texas Department of Criminal Justice, Institutional Division, for indecency with a child dated January 14, 2000, in the 176th Court." Accordingly, the sentence in cause number 805,726 is the third consecutive life sentence appellant will serve.

The judgment in cause number 805,728 is reformed. That judgment will now read: "This sentence runs cumulative to cause no. 805,726, a life sentence in the Texas Department of Criminal Justice, Institutional Division, for indecency with a child dated January 14, 2000, in the 176th Court." Accordingly, the sentence in cause number 805,728 is the fourth consecutive life sentence appellant will serve.

The judgment in cause number 801,420 is reformed. That judgment will now read: "This sentence runs cumulative to cause no. 805,728, a life sentence in the Texas Department of Criminal Justice, Institutional Division, for aggravated sexual assault of a child dated January 14, 2000, in the 176th Court." Accordingly, the sentence in cause number 801,420 is the fifth and final consecutive life sentence appellant will serve.

### III. Cruel and Unusual Punishment

In appellant's fourth and fifth points of error, he claims the sentences are cruel and unusual under both the Federal and State constitutions. Appellant has failed to preserve these complaints for review by not raising them in the trial court. "As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion...." Tex.R.App. P. 33.1(a). Appellant did not object to the sentences as violating his constitutional rights at the time they were announced. Nor did he raise these arguments in a post-trial motion. The constitutional right to be free from cruel and unusual punishment may be waived. *Solis v. State,* 945 S.W.2d 300, 301 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd); *see also Stewart v. LaGrand,* 526 U.S. 115, 119, 119 S.Ct. 1018, 143 L.Ed.2d 196 (1999) (concluding the defendant waived his right to complain the gas chamber was cruel and unusual where he elected that method over Arizona's default election of death by lethal injection).

Here, not only did appellant fail to preserve this argument for appeal, but at the sentencing hearing, after the court was abundantly clear that it would proceed to sentencing without waiting on the Southern District, appellant told the court, "I just-you know, I'm guilty. What I did, it's a heinous crime, and the best place for me is to *spend the rest of my life* in prison." (Emphasis ours.) And, in a letter to the judge attached to the PSI report, *see supra* Part II.A. and note 8, appellant also suggested that spending the rest of his life in prison was an appropriate punishment. By sentencing him to five consecutive life sentences the judge ensured that appellant will spend the rest of his life in prison— precisely what he told the judge would be best. Appellant can hardly complain about the sentence he received when it is essentially the sentence he requested. Appellant's fourth and fifth points of error are overruled.

### IV. Ineffective Assistance of Counsel and Involuntary Plea

In his final two points of error, appellant contends the trial court abused its discretion in denying his motion for new trial which he based, in part, on a claim that he received ineffective assistance of counsel because his lawyer allegedly promised he would serve his federal time before his state time if he pled guilty to the state

charges. Appellant further contends that, as a result of his lawyer's unprofessional advice, his plea was involuntary.

▌ "The constitutional key to validity of a guilty plea is that it be voluntary and intelligently made and, if upon advice of counsel, that counsel be reasonably competent and render effective assistance." *Meyers v. State,* 623 S.W.2d 397, 401–02 (Tex.Crim.App.1981). "When a defendant challenges the voluntariness of a plea entered upon the advice of counsel, contending that his counsel was ineffective, 'the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Ex parte Moody,* 991 S.W.2d 856, 857–58 (Tex.Crim.App. 1999) (quoting *Ex parte Morrow,* 952 S.W.2d 530, 536 (Tex.Crim.App.1997)). As with other types of ineffective assistance of counsel claims, the defendant bears the burden of "showing that counsel's performance fell below a reasonable standard of competence and, with reasonable probability, he would not have pled but instead would have insisted on going to trial were he properly advised on how his federal and state sentences would interact." *Id.* at 858. In this context, the harm prong is satisfied *only* upon proof that the defendant would not have pled but for his counsel's ineffectiveness. *Rodriguez v. State,* 899 S.W.2d 658, 666 (Tex.Crim.App.1995). We first examine counsel's performance. *Ex parte Moody,* 991 S.W.2d at 858.

▌ The record contains the affidavits from United States Customs Agent Robert Sherman, Houston Police Officer James Chapman, and appellant's attorney, Jim Leitner. Leitner's affidavit states: "The only thing [appellant] ever discussed with me was that he be filed on in Federal Court and have *a chance* to do his time first in a federal institution. We both knew from the beginning that there were *no guarantees that he would ever see the inside of a federal institution.*" (Emphasis ours.) Similarly, Sherman and Chapman, who were apparently working together, discussed with appellant the possibility of a deal in exchange for appellant turning over the names of other pedophiles in the Houston area with whom he traded pictures over the Internet. Both of their affidavits state that they never promised appellant he would serve time in a federal prison before serving time in the state prison, and Chapman's affidavit further provides that, "in response to Agent Sherman's statement that no promises could be made regarding [the order of] sentencing, [appellant] stated that he knew that because *his attorney had explained that to him.*" (Emphasis ours.) This case is distinguishable from *Ex parte Moody.* 991 S.W.2d 856. There, the trial court entered findings of fact that the defendant's lawyer promised he would serve his state time concurrently to his federal time. *Id.* at 857. Here, all of the witnesses but the defendant swore no such promise was made. Nothing compels the trial court to accept as true appellant's version of events simply because he has said so. Where there is conflicting evidence, as there is here, we cannot say that the trial court abused its discretion in denying appellant's motion for new trial on a claim of ineffective assistance of counsel. *Salazar v. State,* 38 S.W.3d 141, 148 (Tex.Crim.App. 2001).

▌ Although we need not address appellant's final point of error in light of the fact that his involuntary plea claim is predicated on a finding that his lawyer was ineffective, we do so in the interests of justice. A record reflecting that the trial court properly admonished the defendant

as to the consequences of his plea is *prima facie* evidence that the defendant entered a knowing and voluntary plea. *Richard v. State,* 788 S.W.2d 917, 920 (Tex.App.—Houston [1st Dist.] 1990, no pet.) (citing *Ex parte Williams,* 704 S.W.2d 773, 775 (Tex.Crim.App.1986)); *Ribelin v. State,* 1 S.W.3d 882, 884 (Tex.App.—Fort Worth 1999, pet. ref'd). Upon a *prima facie* showing of voluntariness, the defendant bears the burden of showing that he entered the plea without knowing its consequences. *Martinez v. State,* 981 S.W.2d 195, 197 (Tex.Crim.App.1998); *Cantu v. State,* 993 S.W.2d 712, 717 (Tex.App.—San Antonio 1999, pet. ref'd). On appeal, we presume the regularity of the judgment and proceedings in the trial court, and the defendant bears the burden of overcoming this presumption. *Dusenberry v. State,* 915 S.W.2d 947, 949 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd).

■■■ At the plea hearing, prior to accepting appellant's guilty plea, the court properly admonished appellant and verbally informed him of the possible consequences of his pleas, including the possibility that his sentences could run consecutively. The court further explained that this means appellant would "finish one sentence before you would begin another sentence." Appellant was further admonished at the plea hearing that, if any of the enhancement paragraphs were found true, the court would be required to sentence appellant to life imprisonment in the three aggravated sexual assault cases and could sentence him to life in the three indecency cases.[10] These admonishments were reiterated to appellant at the first sentencing hearing, when appellant changed his pleas to the enhancement paragraphs

from "not true" to "true." Furthermore, each judgment recites:

> The Defendant waived his right of trial by jury, and pleaded [guilty]. Thereupon, the Defendant was admonished by the Court as required by law. It appearing to the Court that the Defendant is mentally competent to stand trial, that the plea is freely and voluntarily made, and that the Defendant is aware of the consequences of his plea; the plea is hereby received by the Court and entered of record.

In the absence of an affirmative showing to the contrary, the above recitation is entitled to a presumption of regularity. *See Dusenberry,* 915 S.W.2d at 949. Finally, at the second sentencing hearing, the following dialogue occurred between appellant and the court.

THE DEFENDANT: Your Honor, I have attempted to cooperate as much as possible. I pled guilty under—and I was under with [sic] the understanding that I would be sentenced in federal court first. That's the reason for pleading guilty. Otherwise it would not have been a voluntary plea. You know I've cooperated with the State and I've cooperated with the federal government as much as I can, you know, and I stand here—I'm not asking any less time. I'm not asking any less sentences. I expect to get six life sentences, and all I ask is to, you know, give me a chance where I get what I, you know—

THE COURT: Give you a chance for what?

THE DEFENDANT: Give me a chance to get my federal time taken care of. I've—you know—I waived indict-

---

10. In cases of persons previously convicted of aggravated sexual assault, the Penal Code requires the imposition of a life sentence. Tex. Pen.Code Ann. § 12.42(c)(2) (Vernon Supp. 2000); in cases of indecency with a child, the Penal Code permits the imposition of a life sentence for repeat offenders. *Id.* at § 12.42(c)(1) (Vernon Supp.2000).

ment for purpose of the motion to prosecute [on the federal charges]—I pled guilty [on the state charges]. I've gave [sic] everything away asking nothing in return, and you know, that's all I—am asking.

THE COURT: What is it you expect to receive, life in prison in the federal penitentiary?

THE DEFENDANT: Yes, sir.

THE COURT: As opposed to the state?

THE DEFENDANT: Yes, sir.

\* \* \*

THE DEFENDANT: I just wanted it on record, sir, that—

THE COURT: It's on record.

THE DEFENDANT:-the reason I pled guilty was for this reason. Otherwise it would not have been a voluntary plea.

\* \* \*

THE COURT: [T]he only thing that you wish is that you could spend the rest of your life in federal prison. Well, that may happen, but it's not going to be any of my doing, because I'm not going to run these cases concurrent with something that hasn't happened yet.[11] That's all there is to it.

THE COURT: Anything else you want to say?

THE DEFENDANT: On the life sentences-is it true that if I have to—if I do make parole I still don't get released til three psychologists say so?

\* \* \*

THE COURT: I'm assuming that once I do what I'm about to do, if you ever get out of prison, it will be an amazing feat.

\* \* \*

THE DEFENDANT: *Should I be admonished before I plead guilty?*

(Emphasis ours.)

 The above discussion shows unequivocally that, even after the court made it perfectly clear to appellant that it was going to proceed to sentencing without waiting to see what the federal prosecutor would do, appellant still asked to plead guilty and to receive his admonishments, evidently unaware that, under Texas law, his plea was accepted by the court when it ordered the PSI report.[12] In short, appellant sought to enter a second guilty plea, even after the court informed appellant that it was not "going to run these cases concurrent with something that hasn't happened yet." A plea is not rendered involuntary simply because the defendant did not receive the punishment he hoped for, even if his expectation was the result of something the defendant claims his lawyer told him. *Heiligmann v. State,* 980 S.W.2d 713, 715 n. 4 (Tex.App.—San Antonio 1998, no pet.). Here, appellant simply hoped he would do his federal time before his state time. That is insufficient to overcome either the presumption which attached when the trial court properly admonished him prior to accepting his guilty plea or the presumption of regularity of judgments, which here indicate appellant understood the consequences of his plea and that his plea was "freely and voluntarily made." Appellant's final point of error is overruled.

11. Although a federal complaint had been prepared against appellant in either October or November of 1999, as of March 24, 2000, no federal indictment had been returned.

12. *See, e.g., Davis v. State,* 861 S.W.2d 25 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

772

The judgments of the trial court are modified and, as modified, affirmed.